We are happy to hear argument in 14446 United States v. Bryant. Cindy Popkin Bradley Good morning, judges. My name is Cindy Popkin Bradley and I represent Mr. Bryant, the appellant. I'm from Raleigh, North Carolina, and I represented him on his direct appeal and also this appeal after remand. The standard of review now is de novo for legal conclusions and clear air for fact-finding. This time, I'm going to be clear and tell the court that the relief that I'm seeking for Mr. Bryant is that the case be remanded back to Charlotte to Judge Cogburn and that he be ordered to apply the guideline 2A.2.4, which is for obstructing or impeding officers, instead of the aggravated assault guideline that he used. That's what I asked last time. I, it was one of my first appeals. It was also my first argument and I think I wasn't exactly clear. I was afraid, really, to say exactly what I wanted. And, you know, I thought Didn't a prior opinion indicate that the district judge was to undertake a fact-finding in light of the relevant legal standard and that the district court was not obliged to apply 2A.2.4? You're correct. And when we got there, I actually requested to represent Mr. Bryant at the re-sentencing, the remand and the re-sentencing, and Judge Cogburn did that. When we went into court, he started out simply by saying, you know, I find that a gun was used but not brought to the fight. And, I mean, we remanded for factual finding, didn't we? For him to support the record, the record was not clear before. I felt like the record was clear, but It had been a question of law. We resolved it one way or another up here. I mean, but we remanded it because we wanted to make, him to make a factual finding in light of the relevant legal standards and wasn't that what he did? He thinks he did, and I believe that... Well, why don't you tell us why he was wrong, in your view? Right. I think that there's nothing, there was some more evidence. The seagull, the victim, testified again. And, but there was nothing, anything additionally. And if I could just back up, it's... At the first sentencing, Judge Cogburn said there was no gun involved. But then he found that it was an aggravated assault. This time, he just merely said, there was, he didn't bring a gun to the fight, but that a gun is involved. And that's how he found it. I believe that he's wrong, because if you look at these, if you go to... What part is wrong? That he, that he found that a gun was involved. We've had several witnesses that testified... They did. ...that Mr. Bryant was trying to obtain the officer's firearm. And if the district court judge was entitled to believe their testimony, in other words, that that testimony was not incredible as a matter of law, why isn't that sufficient? Because if you look at the other cases, which I, you know, there's not a case like Mr. Bryant's in the Fourth Circuit. When we look at the Hooker case, which is persuasive authority from the Fifth Circuit, and Judge Wynn got that just within minutes when we started that hearing, and they even say that these two overlap, the two guidelines, and that 2.4, which is what I am looking at, that I would like for my client, which I think is the law, that that is meant to apply to possession of weapons and verbal threats, while 2.2 is meant to apply to something more. When you get to the aggravated assault, you need more than involvement or possession of a gun. In this case, I mean, he did touch... The judge found that he touched the gun or the holster. Three or four people testified to that. That, that's in the facts. You're correct about that. However, when you look at the other cases, he... Well, let's try this. If your client had been successful in obtaining the firearm, he was able to extract it from the officer's holster, would that be sufficient for the guideline, 0.2, to apply? No, because I think 2A, 2.4, covers possessing a weapon. Well, it doesn't, all 2A, all 0.2 requires is that a weapon be involved. And that's the, that's the wording of the guideline. That's the finding of the district court here, that a weapon was involved. They were crucial to the district court's finding, were the three witnesses that said he was apparently lunging for the gun. And, you know, if the guideline did not use the word possession or use or brandishing, or use the word involved, and that would seem to be directed at a situation precisely like this one. Now, I suppose if a weapon had been used or discharged, or serious physical injury would have resulted, the guideline range would have been even higher, would it not? Yes. So what you have here is a kind of a mid-range provision, something more than just obstructing an officer, but something less than the use, possession, brandishment, discharge. And Judge Cogburn says, you know, given what took place here, given what transpired here, this falls in this middle range. Not the most serious conceivable confrontation or assault, but not the most benign, quote-unquote, either. And it's hard to see, it's hard for me to see how that's wrong, right? In short, the judge did what we told him to do. And a second remand would leave everybody scratching their heads. If I may, Judge. I'm sorry. I'm not finished. You know, I am here because you're the legal scholars, and there is something that seems so fundamentally wrong with this, with the word involve. And when you look at the facts of this case, and you look at the facts of other cases, people are lunging for the gun. My client was pushed in a bathroom by a 300-pound security guard. This security guard was on top of him. He was flailing around. You know, the facts are that he touched the gun, he touched the holster, but basically, if you don't remand it, and order him to apply the other guideline, then basically you're saying that touching a gun under these circumstances is an aggravated assault. And wasn't there more? Wasn't there testimony by an agent that your client said that if he could get that gun, he would kill him? You know, the man was bipolar, and I think that what could have happened, what would have happened... We're simply dealing with an evidentiary presentation. The question is, was there evidence to that effect? There was evidence of that. And whether you disagree, of course, we could disagree whether or not it was evidence you want to believe or not believe, but that's up for the trial judge in this instance. Your point seems to be that there must be possession in order to get the point forward. Not exactly possession, but some sort of control or authority over the gun. I mean, I guess it would be possible to get a hold of a gun still in the holster. And where does that come from, that you've got to have control over the gun to get a point forward? Because my client's behavior is covered under 2A2.4, and when you go to the aggravated assault, it just takes... It... I'm sorry. It takes more there. It's situations where it looks like to me when you read the cases that you have to terrorize someone, kidnap them, do something very egregious to them, more than just trying to grab a gun. And I'm not reserving any time here. You know, the cases that are either unpublished that the government has cited, or they're from other circuits, we just don't have this sort of case in our circuit. Well, the central difference between point two and point four doesn't really come down to a matter of intent. That is intent to cause harm with the gun. Yes. However, you can, you know... I'm sorry. I just don't see how I can continue to... Because I can see that you don't agree. It just... There seems to be something wrong with my client's case. Wouldn't that be a good matter to take up with a sentencing commission? You mean that the guidelines are just... They're confusing or they're... The guidelines are just wrong. I wonder if that's a policy question. It seems illogical that someone could bust someone's lip and get 130 and then 115 months for conduct. And I'm not... I think it's... I don't think we impede law enforcement officers. I don't think we fight them. But in this case, this man was... You know, he was trying to help himself. And perhaps you're right, that there's just something wrong with the guidelines and there's no relief here. That's disappointing. You know, you present a case in which I don't disagree with you that under the totality of the facts here, that it very well could come out in the view that you've just expressed. And it may even look like that's the way it should be. The problem we have on appeal is that's not our call here, is that we have to look at the evidence as it was presented and whether the trial judge made a mistake or an error because he didn't have evidence to support the outcome of it. And when we are given evidence, to support the outcome of it, we don't have that authority to just say, well, we see it differently. We have to give the trial judge that level of deference. Well, I just think he contradicted himself to do it, which is, you know, he just... First, he says a gun is not involved. He gives him aggravated assault. Then he says a gun is involved, but he didn't bring, you know... So it's semantics. And unfortunate. And... Anything further? No. Well, we want to thank you. It's obvious you believe strongly in your client's case, and we appreciate that very much. Thank you. And you also have some time for rebuttal. Thank you. Mr. Miller, would you have a chance? Good morning. May it please the court, William Miller on behalf of the United States. On remand, the district court did exactly what this court required and made the requisite findings to support application of the aggravated assault guideline. The court clarified its earlier statements, credited the eyewitness testimony and the defendant's prior statement, and found that this case involved the threatened use of a firearm. Because aggravated assault is triggered by the involvement of a firearm, the district court's finding that the defendant in this case threatened use of the firearm is sufficient to trigger the aggravated assault guideline. There is no requirement in the plain language of the guideline or the case law to require something more than involvement. And that proposition supported... Do we even need to get into the question of threatened use? I mean, that was sort of a subtext of some of the briefs, but I'm wondering if that's really relevant here. It's not required, but threatened use certainly would be involvement. Involvement is the legal standard, and so you could have involvement without threatened use. You can have involvement without a threatened use. Correct. But the thing I'm worried about is sort of adding our own gloss to this provision. If we just let the word involved sort of stand by itself and let fact-finding take place under that legal standard, it might be better. That's an important clarification. If we try to over-script it. That's an important clarification. The government's position is not that threatened use is required. It's just what the court found here. And so the finding of threatened use qualifies as involvement, and involvement is the legal standard set out in the guidelines, and it's the only threshold that's required to trigger the aggravated assault. And it makes sense in looking at the structure of the guidelines  contains a graduated list of enhancements covering things like the discharge of the gun, otherwise used the gun, brandish, or threatened use of the gun. And so that just illustrates the point. They're more serious than point four. Correct. And that a range of conduct is covered by that involvement language. I'd also point out that the defendant mentioned in the opening argument about sort of incidental conduct. The district court in this case was very careful to distinguish that case from this one. And so this is not just a wrestling match where a defendant happens to touch the gun. Here, the defendant's intent was important, and his post-arrest statements were important. And so the district court in this case was careful to distinguish the sort of incidental conduct case. That's not the case that's before the court here. So the court doesn't need to decide that case. Judge Wynn made the point, though, that this is not necessarily an intent-based standard. It's not necessarily an intent-based standard, but I say all that just to point out that this case, this court doesn't have to resolve the sort of incidental conduct case. Because here, the district court was careful in its findings to distinguish that case. Can intent play into involvement? I think intent can play into involvement. And I think that control is not necessarily what it would turn on. Intent is an important component as to whether or not the gun's involved. It can be part of a factual finding, but it's not of legal significance. But that's not to say it can't be part of a factual finding. Correct. In determining whether or not a firearm was involved, the defendant's intent could be a relevant consideration in making that legal determination based on the language of the guideline. I also want to distinguish briefly the Hooker case that the defendant mentioned. In that case, the defendant pointed a gun at the police officer while kicking him and threatening to kill him. That's a very different case than the case presented here, and it doesn't really explore the margins or the boundaries of this particular provision. That's within the heartland of the provision. I'd also point out that the aggravated assault guideline has applied to conduct that we would consider much less egregious than that presented here. I mean, it doesn't have to be a gun. Aggravated assault's applied in cases where a chair was thrown, a pen was used to assault a detention officer, or as I cited in my brief, even a case where the defendant kicked a door at a police officer. And so on the spectrum, this case, which the district court found to be very, very dangerous, and where someone could have easily been killed, is not even really at the bottom end of the spectrum. And so given that the district court did exactly as this court required on remand and made the requisite factual findings to show involvement of a firearm, the government asked that this court- How many eyewitnesses were there to the struggle? There were three eyewitnesses to the struggle in the bathroom, and one additional witness who testified to the struggle prior to going into the bathroom. And both of the eyewitnesses who were the employees, not the security guard, testified that they saw the defendant going for the gun, which again formed the basis for the court's determination that this wasn't incidental conduct. And the security guard who was the victim here also testified. Anything further? Nothing further, unless the court has any other questions. Counselor, you have some rebuttal time. The only thing that I could add, again, is just that it seems to me that if you affirm the decision and you don't actually look at this, what you're doing is saying that attempting to involve a gun would qualify for the aggravated assault. And that, I believe, is incorrect. Although I do think that the two guidelines could be written a little differently and more clear. When I looked at the statutory index and it said you go to these two guidelines, a lot of times to me it looked that maybe 2A.2.3 was more appropriate. Still, I may not have the words to impart what I'm trying to say, but I do believe that his attempt, and there's no dispute that these witnesses said he touched the gun, he touched the holster. But I think then you're saying that that involves a gun. And I think that is the question here. What is involvement? And I was hoping you would see it differently. Thank you. Thank you. And I see you're court appointed. We would like to express the appreciation of the court for your good services. And we'd like to come down and greet both of you, shake hands.
judges: J. Harvie Wilkinson III, G. Steven Agee, James A. Wynn, Jr.